IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| DOUGLAS R. BOESE, ) | Cause No. CV 05-28-GF-SEH-RKS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | FINDINGS AND RECOMMENDATION |
| ) | OF U.S. MAGISTRATE JUDGE |
| BILL SLAUGHTER, Director, MDOC; ) | |
| ROBERT PAUL, Contract Monitor MDOC/ ) | |
| CCC; JAMES MacDONALD, Warden, ) | |
| CCA/CCC; KERI KINYON, CCA/CCC ) | |
| Compliance Coordinator; ALLISON ) | |
| VARNUM, Health Services Administrator/ ) | |
| Medical Director, CCA/CCC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**I. Background**

On March 24, 2005, Plaintiff Douglas Boese filed this action alleging civil rights violations under 42 U.S.C. § 1983. Boese is a state prisoner proceeding pro se.

At the time the Complaint was filed, Boese was an inmate at Crossroads Correctional Center, a private prison in Shelby, Montana, operating under contract with the State of Montana. He contends that he was denied adequate dental care at that facility. Defendant Slaughter was the Director of the Montana Department of Corrections ("DOC") at the pertinent times, and Defendant

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

Paul was responsible for monitoring Crossroads' operations under the contract. Defendant MacDonald is the Warden at Crossroads, Defendant Varnum is the Medical Director at Crossroads, and Defendant Kinyon is Paul's counterpart at Crossroads.

Several motions are before the Court. Defendants Slaughter and Paul ("the DOC Defendants") have moved for summary judgment and for a protective order against further discovery pending resolution of their summary judgment motion. Defendants MacDonald, Kinyon, and Varnum ("the Crossroads Defendants") have moved for summary judgment and to strike a reply brief submitted by Boese. Plaintiff Boese has moved to strike affidavits filed by two dentists in support of the Defendants' motions for summary judgment and to compel the DOC Defendants to respond to certain discovery requests.

Boese and the Crossroads Defendants also engaged in some post-briefing sparring in the form of "objections" and "responses" to objections. Those documents violate D. Mont. L.R. 7.1(f) and (g) and will not be considered.

## II. Summary Judgment Standards

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. *Id*.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Id.* at 252.

**III. Analysis**

    **A. Eighth Amendment Standards**

The Eighth Amendment requires that prisoners receive adequate medical care, including dental care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hunt v. Dental Dep't*, 865 F.2d 198, 200

(9th Cir. 1989); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle*), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Prisoners must also be protected from serious risks to their health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993); *Wallis v. Baldwin*, 70 F.3d 1074, 1076-77 (9th Cir. 1995). To show a violation of the Eighth Amendment, a prisoner must show both (1) that he was confined under conditions posing a risk of objectively sufficiently serious harm and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care. *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (quoting *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)) (internal quotation marks omitted). The pertinent state of mind is "deliberate indifference."

Mere disagreement between a prisoner-patient and prison medical personnel over the need for or course of medical treatment is not a sufficient basis for an Eighth Amendment violation. *Franklin v. State of Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion). In short, a difference of medical opinion does not mean that one medical provider is "deliberately indifferent" to a prisoner's need; it means that the provider has a different way of addressing that need.

To determine whether a defendant acted with deliberate indifference, courts must consider "the seriousness of the prisoner's medical need" and "the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Estelle*, 429 U.S. at 104). As examples of serious medical needs,

the Ninth Circuit has listed the following:

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin*, 974 F.2d at 1059-60; *see also id*. at 1060 n.12 (noting that "the rule of our circuit" is that an inmate need not show that a delay in medical treatment caused substantial harm).[1]

**B. Boese's Motion to Strike**

Boese moves to strike the affidavits of Dr. Miltko and Dr. Bennett on the grounds that their access to his dental records violated the "Health Information Privacy and Protection Act." There is no "Health Information Privacy and Protection Act." The Court believes Boese means the Health Insurance Portability and Accountability Act ("HIPAA"), which, despite the inaccurate acronym, is sometimes referred to as HIPPA.

### 1. Crossroads Defendants' Motion to Strike Boese's Reply

As an initial matter, the Crossroads Defendants move to strike Boese's reply in support of his motion to strike on the grounds that it contains statements that violate Fed. R. Civ. P. 11 and 12(f). By its terms, Rule 12(f) applies to pleadings, not motions. Its purpose is to avoid litigation of spurious issues. *Sidney-Vinstein v. A. H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); Fed. R. Civ. P. 7(a), (b). Rule 12 does not apply. Rule 11 applies, but Defendants did not follow the

---

[1] While the Crossroads Defendants cite several cases that are binding authority, they also rely on a case from the Northern District of New York to establish the legal standard for a serious medical need. They assert that the legal standard "contemplates a condition of urgency that may result in degeneration or extreme pain." *See, e.g.*, Crossroads Br. in Supp. of Summary Judgment (doc. 30) at 3, 5 (citing *Baumann v. Walsh*, 36 F. Supp. 2d 508, 510 (N.D.N.Y. 1999) (internal quotation marks omitted)).
    Controlling law for cases decided in the District of Montana is established by the Ninth Circuit Court of Appeals. In the Ninth Circuit, *McGuckin* is controlling authority. Other Ninth Circuit decisions are on point as well.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

procedure set forth in subsection (c)(1)(A). Defendants' motion must be denied.

However, in the exercise of its own inherent authority, the Court has considerable discretion to fashion an appropriate sanction for conduct that violates previous orders or interferes with the orderly and expeditious disposition of cases. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991). Boese was specifically warned by Judge Ostby that "this Court will not tolerate uncivil remarks or *ad hominem* arguments from any litigant." Order Striking Plaintiff's Reply (doc. 23) at 2. In his Reply, Boese states that he "is always one step ahead of the opposing counsel in defeating their blatant misinformation to this court in their frivolous filings" and that he intends to give one of Defendants' experts a "lesson" and that "this lesson is not free." Boese Reply (doc. 48) at 2, 4. These remarks are unnecessary and uncivil. They are *ad hominem* attacks. They are made in bad faith. Boese's Reply will be stricken and will not be considered for any purpose.

### 2. Merits of the Motion

In a criminal case, evidence seized in derogation of constitutional rights is not admissible in court. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The exclusionary rule, however, does not apply in cases filed under 42 U.S.C. § 1983, *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997), or, indeed, in the overwhelming majority of civil proceedings. To the extent Boese attempts to argue that the means by which Defendants obtained his dental records requires their exclusion from evidence, he is mistaken, because the exclusionary rule does not apply.

All that is required is that the evidence in question must be admissible. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Dr. Miltko's affidavit indicates that he is a board-

certified dentist and that he reviewed Boese's records. *See* Miltko Aff. at 1-2, ¶¶ 1-2. Dr. Bennett's affidavit indicates the same. *See* Bennett Aff. at 1-2, ¶¶ 1-2. Both affidavits are properly notarized. The Court is not aware of any privilege that could preclude admission of the affidavits or any of their contents. There is no physician-patient privilege under federal law. *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986) (citing *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1976)); Fed. R. Evid. 501. HIPAA does not create en evidentiary privilege. *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004). Boese does not claim a violation of any other federal common-law privilege or of the rules of discovery.

Therefore, Boese fails to present a legal basis for ruling the affidavits inadmissible. His motion to strike is denied.

### C. Defendants' Motions for Summary Judgment

#### 1. Claims Regarding Provision of Dental Care

In support of summary judgment, the Crossroads Defendants adduce an Affidavit from Dr. Kevin Miltko, who opines that Boese "received continued treatment" while he was at Crossroads, that he "suffered no harm due to the dental treatment he received," that "there was no breach in the standard of care," that "there was no negligence," and that Boese "has no damages due to the treatment he received" at Crossroads. *See* Miltko Aff. at 2, ¶¶ 3-7. Dr. Miltko also states that "I saw nothing about Mr. Boese's charts that was abnormal from what I see in my day to day practice from patients who are not incarcerated." Miltko Aff. at 2-3, ¶¶ 4-5, 9.

Dr. Marvin Bennett, Dental Director for the Department of Corrections, provided an Affidavit in support of the DOC Defendants' motion for summary judgment. Dr. Bennett states that

Boese "suffered no harm due to the dental treatment he received while at [CCC], and specifically suffered no harm due to the delay in receiving permanent fillings for caries in teeth # 2 and 3." He avers that "any delay in providing permanent fillings for tooth # 2 and 3 was merely an isolated incident that does not represent a systemic problem in delivery of dental care at CCC." Bennett Aff. at 3, ¶¶ 10-12.

In response, Boese claims that on each occasion that he requested dental treatment, he was merely referred to a dentist and did not actually see one for some time following his request. *See* Pl.'s Mem. in Opp. to Summary Judgment (doc. 42) at 9. Boese also states that his most painful tooth was a wisdom tooth that became abscessed and that he suffered "painful cavities." Boese Aff. (doc. 43) at 4, ¶ 28. In support of his position, Boese offers a letter written by Dr. Bennett on January 12, 2005.[2] In that letter, Dr. Bennett states that Boese should not have been placed on a waiting list and that "a delay in the provision of definitive treatment of approximately 35 Months fails to meet any reasonable standard of care." Pl.'s Statement of Genuine Issues (doc. 43) Ex. V at 1-2.[3]

---

[2] Boese did not formally comply with the requirements of the Federal Rules of Evidence or the Local Rules of the District of Montana. The Federal Rules require him to establish the authenticity and foundation for each document he adduces in evidence, and the Local Rules require that the Statement of Genuine Issues should cite "a specific portion of the record where the fact may be found," D. Mont. L.R. 56.1(b). However, the materials he submitted in response to the Defendants' motions contain the necessary ingredients. He submitted Dr. Bennett's letter with his Statement of Genuine Issues, and his Affidavit states that Dr. Bennett compiled a report regarding the course of Boese's dental care on January 12, 2005. *See* Boese Aff. at 3, ¶ 19. The Court may not hold pro se litigants to the same technical standards it expects counsel to meet. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[3] While Dr. Bennett's letter states that the material used in making Boese's temporary restorations was inappropriate, there is no evidence that use of such materials constituted deliberate indifference to Boese's serious dental needs. The "restorations on # 2 & 3 [were] within normal limits" on January 22, 2004. The Court does not understand any claim to arise as a result of the particular materials used to fashion the temporary restorations. *See, e.g.*, *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996) (holding that a plaintiff claiming an Eighth Amendment violation as a result of a medical provider's method of treatment "must show that the course of treatment the [medical providers] chose was medically unacceptable under the circumstances, and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health."). Additionally, Boese's Complaint, which was filed in March 2005, does not allege

Dr. Miltko's Affidavit establishes that there was no negligence in Boese's dental treatment. If there was no negligence, there surely was no deliberate indifference. While Dr. Bennett's letter to Boese states that the standard of care was violated in one respect, the letter establishes, at best, only a difference of medical opinion about the course of Boese's treatment. That is not enough to show a genuine issue of material fact as to deliberate indifference. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Moreover, the same doctor opines that Boese suffered no harm as a result of his treatment. Finally, Dr. Miltko's averment that he saw nothing in Boese's treatment that was abnormal in comparison to what he sees in his daily practice in patients who are not incarcerated conclusively precludes a showing of wantonness in Boese's alleged lack of care.

Because Defendants have produced evidence that the course of Boese's care does not show deliberate indifference to serious dental needs, and because Boese has not produced any evidence that could support a finding of deliberate indifference, the Crossroads Defendants are entitled to summary judgment on Boese's Eighth Amendment claims. Likewise, because the dental care provided to Boese did not violate the Eighth Amendment, the DOC Defendants could not have contributed to causing such a violation. They too are entitled to summary judgment.

### 2. Claims Regarding Defendant Kinyon's Interference in Grievance Process

Boese has not produced any evidence that Defendant Kinyon intentionally interfered with the processing of any grievances or appeals. Therefore, she cannot be liable to him on that basis. She is entitled to summary judgment.

### D. Boese's Motion to Compel and DOC Defendants' Motion for Protective Order

---

any continuing pain or need for treatment after August 2003.

Because Boese cannot support a case against the Crossroads Defendants for violation of his Eighth Amendment right to adequate dental care, he has no standing to explore Defendant Paul's role in monitoring the contract between Crossroads and the DOC. His motion to compel is moot. The DOC Defendants' motion for a protective order is also moot, because summary judgment should be granted in their favor.

### E. Claims Predicated on State Law

To whatever extent Boese intended to make claims based on state law, those claims should be dismissed. 28 U.S.C. § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction . . . if–
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This Court is not aware of any Montana Supreme Court decision regarding claims brought by inmates under the contract between the Corrections Corporation of America and the State of Montana. It is an open question whether an inmate even has standing to pursue such claims. The resolution of such issues is better left to the state courts, particularly because Boese presents issues regarding core functions of the executive branch of the State government. Further, the Court recommends that the Defendants be granted summary judgment on Boese's § 1983 claims. Pursuant to 28 U.S.C. § 1367(c)(1), (3), and (4), Boese's state-law claims should be dismissed. *See* 28 U.S.C. § 1367(d).

Based on the foregoing, the Court enters the following:

## ORDER

1. The Crossroads Defendants' motion to strike (doc. 49) is DENIED.

2. Pursuant to the Court's inherent authority, Boese's Reply (doc. 48) is STRICKEN.

3. Boese's motion to strike (doc. 41) is DENIED.

4. Boese's motion to compel (doc. 33) is MOOT.

5. The DOC Defendants' motion for a protective order (doc. 35) is MOOT.

The Court also enters the following:

## RECOMMENDATION

1. The Defendants' motions for summary judgment (docs. 25, 29) should be GRANTED. Judgment should be entered by separate document in favor of all Defendants and against Plaintiff Boese.

2. Any and all claims predicated on state law should be DISMISSED pursuant to 28 U.S.C. § 1367(c)(1), (3), and (4).

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[4] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

---

[4] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

Boese must immediately inform the Court and counsel for the Defendants of any change in his mailing address. Failure to do so may result in dismissal of the case without notice to him.

DATED this 5th day of March, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge